## McNally *v.* Mercantile Trust Company, Appellant.

*Principal and surety—Bond—Continuance of work—Payments.*

Where a bond given by a subcontractor to a city contractor contains no provision that upon the default of the subcontractor the surety is to be given an opportunity to complete the work, but the bond on the contrary refers to contracts by the terms of which the contractor is given the right to complete the work, the surety cannot in a suit on the bond by the contractor allege as a defense that the surety was not given an opportunity to complete the work.

If a contractor overpays a bonded subcontractor without the knowledge or consent of the latter's surety, such overpayments are in relief of the surety.

Argued Nov. 4, 1902. Appeal, No. 129, Oct. T., 1902, by defendant, from judgment of C. P. No. 2, Allegheny Co., July T., 1899, No. 688, on verdict for plaintiff in case of Thomas McNally v. Mercantile Trust Company. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Assumpsit upon a bond.   Before RODGERS, J.

From the record it appeared that Thomas McNally had a contract with the city of Pittsburg for building a boulevard. A portion of this work was sublet to Gustave Kaufman.   Kaufman gave McNally the bond in the suit.   Kaufman abandoned the work and it was completed by McNally.

Defendant presented the following points :

1. Under all the evidence in this case the verdict must be for the defendant.   *Answer :* Refused. [1]

2. The burden of proof is upon the plaintiff to satisfy the jury that the work on the contract entered into between the defendant, Thomas McNally, and Gustave Kaufman, for so much of the work as was uncompleted by the said Gustave Kaufman at the time he abandoned said work on August 5, 1898, the same being for the completion of part of the Beechwood Boulevard in the city of Pittsburg, has been done as cheap by the said Thomas McNally as it could have been done by the defendant herein, the Mercantile Trust Company, by reletting the said balance of the work to be completed under said contract, to some other contractor, and the plaintiff failing to satisfy the jury that the work has been so completed, cannot recover in this action, and the verdict of the jury must therefore be for the defendant.   *Answer :* Refused. [2]

3. The plaintiff's estimate, without any evidence whatsoever of consultation with other contractors, or attempting to take bids from other contractors for the completion of the said work, is not sufficient to warrant the jury in finding that the work was completed as cheaply as it could have been done by some other contractor.   *Answer :* Refused. [3]

4. The Mercantile Trust Company, being the bondsmen, were not only entitled to notice of the fact that Gustave Kaufman had abandoned the work to be done and performed by him under the contract referred to, between him and Thomas McNally, the plaintiff herein, but an opportunity to complete the contract referred to under such contractors as they might select should have been given, and the plaintiff having failed to allow the defendant herein to complete the said contract, is not entitled to recover in this case and the verdict must, therefore, be for the defendant.   *Answer :* Refused. [4]

5. The plaintiff in this case, not having accorded the de-

fendant the opportunity to complete said contract, is not entitled to recover for any expenses incurred in the absence of proof that such expenses were directly authorized by the Mercantile Trust Company. *Answer :* Refused. [5]

6. Under the terms and conditions of the bond sued on in this case, the defendant herein was subrogated to the rights of its principal, Gustave Kaufman, and one of those rights being the right to complete the said contract by the said Kaufman, having been denied this defendant by the plaintiff herein, he is not entitled to recover in this action, and the verdict must, therefore, be for the defendant. *Answer :* Refused. [6]

7. It appearing from the evidence that about forty per cent of the work had been done by the said Gustave Kaufman on his said contract with the said plaintiff herein, Thomas McNally, at the time the said Kaufman abandoned the said contract, and he had drawn from the city of Pittsburg, upon warrants indorsed and approved by the plaintiff herein, about sixty per cent of the contract price for the completion of the entire work, the same being a contravention of the provisions of the contract which provided that the said Kaufman was only to receive the actual value of the work done and material furnished; that such an act by the plaintiff, in paying to the said Kaufman more than was due under the terms and conditions of the contract, was such a material variation of the said contract as would discharge the defendant herein, the surety under the bond sued on in this case, and, therefore, the plaintiff cannot recover and the verdict must be in favor of the defendant. *Answer :* Refused, for the reason that the point assumes a certain exact proportionate percentage, of which there is no evidence. [7]

8. If the jury believe that at the time the final estimate to Gustave Kaufman was made, the figures were made by the plaintiff personally and these entitled Gustave Kaufman to a much less sum than the city engineer's estimate at that date, it was the duty which the plaintiff owed to the Mercantile Trust Company, as surety, to refuse to assign said estimate of the work, and failing to do so he released the said surety from all liability on the bond in suit. *Answer :* Affirmed. In the absence of fraud on the part of McNally these estimates would be binding. [8]

Verdict and judgment for plaintiff for $11,775. Defendant appealed.

*Errors assigned* were (1–8) above instructions, quoting them.

*Homer L. Castle*, with him *William A. Stone* and *Stephen Stone*, for appellant.

*A. M. Imbrie*, with him *Leander Trautman*, for appellee.

OPINION BY MR. JUSTICE BROWN, January 5, 1903:

The first reason given by the appellant why the appellee ought not to recover from it is, that, upon the default of the subcontractor, a proffer ought to have been made to it, as the surety on his bond, of the privilege of completing the work, and the appellee having himself proceeded to do so without such proffer, it is discharged from all liability. The default occurred on August 5, 1898. On the same day McNally notified the Mercantile Trust Company, in writing, of Kaufman's default, and that he would look to it, as his surety, for all damages he might sustain under the contract by reason of such default. A day or two afterwards he called upon E. L. Porter, vice president of the company, and talked to him about Kaufman's abandonment of the work. Porter said: "We won't admit liability;" when McNally replied: "The only thing for me to do is to go ahead on the contract." That this took place between them is not denied by Porter. Three days after the abandonment, on August 8, McNally notified the company that he would proceed to complete the work abandoned by Kaufman, his subcontractor, and that, while he was under no obligation to consult the company, he was willing to consider any suggestions it might make and would confine the cost of finishing the work to the lowest possible figure, that the loss might be as low as possible. To this, reply was made within a few days, stating that the company admitted no liability on the bond, but was willing to extend any courtesy that would facilitate the completion of the contract at the least expense.

There is nothing in the contract or the bond providing that, upon the default of Kaufman, McNally was to give the surety an opportunity to complete the work. The bond was executed

by the Mercantile Trust Company with the terms of McNally's contract, as the original contractor with the city of Pittsburg, as well as his contract with Kaufman, before it. Both contracts entered into the bond, for Kaufman's with McNally expressly provided that certain portions of the latter's contract with the city were made parts of it. Among the terms of McNally's contract with the city there was one providing that at any time the director of the department of public works should be of opinion that the said work, or any part of it, was unnecessarily delayed, or that the contractor was wilfully violating any conditions or covenants of his agreement, or executing the same in bad faith, he should have power to notify the contractor to discontinue all work under the contract, and that thereupon the contractor should cease and the director himself have the power to complete the work at the expense of the contractor. In Kaufman's contract with McNally there is a stipulation that nothing contained in it "shall limit or modify the right of said McNally to discontinue work by said Kaufman upon said Beechwood avenue and prosecute the same to completion, under the provisions of said original contract, in the same manner as the director of the department of public works has power to do, upon the condition there made." The condition of the obligation was that Kaufman would be bound by the terms of the contracts.

Though McNally had the clearly reserved right under the contract "to discontinue work by said Kaufman," he did not attempt to do so. He took it up and carried it on to completion, under his obligation to the city of Pittsburg, only after the subcontractor had absolutely defaulted by abandoning the contract. If he had not done so, heavy penalties awaited him. He did all he was required to do, so far as this surety is concerned, when he notified it of the default of the principal in the bond. It might, as a matter of grace, but not of right, in view of what it knew was in the two contracts, have asked to be allowed to complete the work, but it did not do even that. It persistently denied all liability, and now inconsistently complains that the opportunity was not given it of completing the work. Under the circumstances there was nothing for McNally to do except to go on and complete it himself in accordance with the terms of his contract with the

city. If he had waited on the arbitrary will and pleasure of the appellant, very serious consequences would have awaited him, which, it is very plain, the trust company would not have assumed for him. The jury were instructed that, "he was to complete his contract, paying for labor the ruling prices in the market at the time, paying for material the market prices which were ruling in this district at that time, and to use every economy that was possible to do this work in a reasonable and careful manner, in order to carry out the contract with the city of Pittsburg, under which he was primarily bound. He must convince you by the weight of the evidence that he did complete this contract practically as cheaply as it could have been done, . . . . acting in good faith towards this surety." By their verdict the jury found that he had fully discharged the duty that was upon him. This disposes of the first reason given for reversing the judgment.

Appellant's second ground of complaint is that Kaufman had been overpaid, and that the overpayments, having been in excess of the claim made upon it, were to its prejudice, and it is, therefore, discharged from all liability on the bond. If McNally did overpay Kaufman without the knowledge or consent of the surety on his bond, such overpayments were in relief of it: General Steam Navigation Company v. Rolt, 6 C. B. R. N. S. 550; Calvert v. London Dock Co., 2 Keen, 638. The answer to this is that Kaufman's contract with McNally provided that for material and labor furnished, he should be paid " in certificates issued by the department of public works of the city of Pittsburg, as from time to time received therefrom by said McNally, and as from time to time made upon estimates calculated on measurements taken by the city's engineer," and "such certificates, when delivered by McNally to Kaufman, shall be accepted to the amount thereof for work done and material furnished under this contract." The city did not know Kaufman. It paid McNally, its contractor, in the mode just indicated, and he, in turn, gave to Kaufman, out of what he received, what was coming to him under the terms of the contract. Kaufman was to receive full payment, not only for all the work he had done, but for all material furnished. The estimates included not only the work actually done on the ground, but material as well that had been furnished, but not used at

the time of the abandonment. Measurements were to be made by the engineer of the city of Pittsburg, and, on estimates based upon them, payments were made from time to time to McNally, and by him to Kaufman. These estimates were given to McNally by the city engineer. In one or two instances, McNally may have hepled to make the measurements, but the city engineer went over them to see that they were all right. He testifies that all of the certificates that had been issued were based on measurements made by the city force, with the possible exception of two that were based on measurements made by McNally, but that the city had not issued the certificates until these two measurements had been checked up and found to be satisfactory. The court submitted to the jury for their determination whether McNally, by anything he had done, had participated in overpayments, to the prejudice of the surety, and whether, if Kaufman actually was being overpaid, he knew it and assisted in deceiving the city authorities, under whose estimates the payments were made. We have carefully scanned all the testimony, and nothing can be found in it that would have justified a finding that McNally had been unfaithful to this appellant. There is not a line in it even showing that the measurements made were. inaccurate, or that the estimates were for amounts which exceeded the work actually done and the value of the material on the ground. A finding by the jury that overpayments had been made to Kaufman, to the prejudice of the trust company, could not be sustained.

Under the assignments of error, no other question remains to be considered.

Judgment affirmed.